IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Marcia S. Krieger

Civil Action No. 10-cv-01828-MSK
Criminal Action No. 05-cr-00141-MSK-1

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

v.

LEE ARTHUR THOMPSON,

      Defendant-Movant.

---

## ORDER DENYING 28 U.S.C. § 2255 MOTION

---

Movant Lee Arthur Thompson filed *pro se* a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on August 2, 2010 (Doc. No. 1644).[1] On August 5, 2010, the Court directed the Respondent to file a response to the motion (Doc. No. 1646), and on September 17, 2010, the Respondent filed its response (Doc. No. 1665).  Movant subsequently filed a series of documents that cumulatively will be taken as his reply (Doc. Nos. 1675, 1682, 1697, 1707, 1708, 1749).

The Court must construe liberally the papers filed by Movant because he is representing himself.[2]  However, the Court must not be the *pro se* litigant's advocate.[3]

---

[1] Document numbers in this Order refer to the criminal case, 05-cr-00141-MSK-1.

[2] *See* Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

[3] *See* Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

After reviewing the entire file, the Court finds that an evidentiary hearing is not

necessary.[4]  For the reasons stated below, the Court denies the motion to vacate.

## I.      Background

The extensive factual background of this case was summarized by the United

States Court of Appeals for the Tenth Circuit in Movant's direct appeal.

> [T]he Alpine Rose motel was a hub of drug activity for years,
> but that business really ratcheted up in 2004 when Lee Arthur
> Thompson and Alvin Hutchinson moved in.  Mr. Thompson,
> known to the residents of the Alpine Rose as "LT," was a crack
> supplier who made two regular, daily deliveries of product to
> the motel. Mr. Thompson's best customer was Mr. Hutchinson,
> a prolific dealer at the Alpine Rose.  But the relationship
> between Mr. Thompson and Mr. Hutchinson was more than
> that of just seller and buyer. One resident of the motel familiar
> with the drug operation described Mr. Hutchinson as Mr.
> Thompson's "right-hand man;" another described Mr.
> Hutchinson's role by saying "[h]e was right under [Mr.
> Thompson]."  Together, Mr. Thompson and Mr. Hutchinson
> acted as authority figures, directing the drug trade at the Alpine
> Rose.  Other individuals never gave orders to Mr. Thompson
> or Mr. Hutchinson.  Even the owner of the motel, . . . a drug
> addict who purchased from Mr. Thompson, followed orders
> given by Mr. Thompson, his tenant.
>      Other Alpine Rose residents, following the lead of Mr.
> Thompson and Mr. Hutchinson, performed a variety of roles.
> Some, the dealers, received drugs from Mr. Thompson and Mr.
> Hutchinson and resold them to street-level customers. Others
> . . . were runners who worked on behalf of the dealers as a sort
> of car-side waiter service, taking orders from customers sitting
> in their cars in the motel's parking lot, retrieving drugs from
> dealers located in the motel's various rooms, and then
> delivering the drugs to the waiting customers.  In return for their

---

[4]28 U.S.C. § 2255(b); Fed. R. Governing Section 2255 Proceedings 8(a); United States v.
Galloway, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995).

labor, runners were entitled to keep a small piece of the delivered drug. Other individuals at the motel, widely known as enforcers, ensured that motel residents abided Mr. Thompson's and Mr. Hutchinson's directions.

Mr. Thompson and Mr. Hutchinson exercised significant control over the lives of the motel's residents. They decided who could live at the motel and who could not. They oversaw day-to-day aspects of the drug trade, and they mediated customer complaints. For example, when a customer complained that [Junior Ray] Montoya had tried to cheat him in a crack purchase, the customer complained to Mr. Thompson; Mr. Thompson rebuked Mr. Montoya; and Mr. Thompson then gave the customer twice the crack he sought to settle the dispute.

Mr. Thompson and Mr. Hutchinson ruled in large measure through the threat and use of violence. . . . [For example,] Mr. Thompson directed a group of enforcers to attack Paul Rose, another motel resident, because he borrowed money from one of Mr. Thompson's girlfriends against Mr. Thompson's wishes. Mr. Thompson and Mr. Hutchinson also used violence against the outside world: they enlisted residents of the motel to use violence on their behalf to collect debts, and armed their lieutenants to drive away from the Alpine Rose rival drug dealers who threatened their commercial dominance of the area's drug trade.

Despite the occasional use of violence against and among residents, a kind of community spirit developed at the Alpine Rose. Mr. Thompson and Mr. Hutchinson organized cookouts, inviting all of those involved in the drug business at the motel to attend. At these gatherings, Mr. Thompson and Mr. Hutchinson provided food for everyone and gave away drugs as prizes. Mr. Thompson organized a "crack scramble" on Mother's Day, throwing crack from a balcony onto the parking lot for the mothers in attendance to grab. Mr. Thompson also organized an Easter egg hunt, though with the traditional egg replaced by a "big rock of crack cocaine." One resident who attended these parties compared the atmosphere to a "company picnic." . . . As one dealer described the atmosphere at the Alpine Rose, residents "support[ed] each other, to keep the customers coming, keep the people coming. It wasn't really a big competition. Everybody was out there to sell drugs, make money. And we just worked together."

3

The residents also helped each other avoid the police. Mr. Thompson, Mr. Hutchinson, and a few other residents had surveillance devices that transmitted live footage of the parking lot and surrounding areas to television monitors in their rooms. If residents became aware of police presence through either the surveillance devices or observation, they notified others in the motel using cell phones or walkie-talkies. Mr. Thompson expected residents to notify him and others if they became aware of either a police presence or some other disturbance.

[After a drug-related shooting at the motel,] most of those involved in the drug operation at the Alpine Rose, including Mr. Thompson and Mr. Hutchinson, began drifting away from the motel. Still, some aspects of the operation continued: Mr. Thompson kept supplying Mr. Hutchinson with crack, which Mr. Hutchinson and others sold from a new address, and when members of the Alpine Rose were eventually arrested, Mr. Thompson posted bail for them.

. . .

[A jury] convicted Mr. Thompson of violating RICO, operating a continuing criminal enterprise ("CCE"), conspiring to distribute and distributing drugs, laundering money, possessing with intent to distribute, being a felon in possession of a weapon, and tampering with evidence.[5]

Movant was sentenced to life in prison.[6]  The Tenth Circuit affirmed the convictions[7] and Movant did not petition the Supreme Court for a writ of certiorari.

---

[5]United States v. Hutchinson, 573 F.3d 1011, 1016-19 (10th Cir. 2009) (footnotes and internal citations omitted).

[6]Judgment (Doc. No. 1286; May 23, 2007).

[7]Hutchinson, 573 F.3d 1011.  The Tenth Circuit remanded to this Court with instructions to vacate Movant's conviction on either the drug conspiracy or the CCE charge pursuant to its decision in United States v. Atencio, 435 F.3d 1222, 1235 (10th Cir. 2006). Hutchinson, 573 F.3d at 1027.  The parties agreed to vacate Count 2, the CCE charge. Order (Doc. No. 1600; Nov. 12, 2009).  This did not affect Movant's life sentence.

Therefore, this action appears to have been timely filed pursuant to 28 U.S.C. § 2255(f).[8]

## II.    Claims

All of Movant's claims allege his trial counsel provided ineffective assistance and, thus, his Sixth Amendment rights were violated.   A § 2255 motion is the appropriate location to raise claims of ineffective assistance by counsel.[9]

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall . . . have the assistance of counsel for his defence."[10]   The Supreme Court has established the two-prong Strickland test to review these claims.[11]   Under Strickland, Movant must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance was prejudicial.[12]

To establish that counsel's performance fell below an objective standard of reasonableness, a movant must establish that his counsel's performance was outside "the range of competence demanded of attorneys in criminal cases."[13]   Prejudice is "a

---

[8]See United States v. Burch, 202 F.3d 1274, 1279 (10th Cir. 2000) (citing Sup. Ct. R. 13.3) (one year statute of limitations begins to run ninety days after Circuit court decision is announced).

[9]United States v. Galloway, 56 F.3d 1239, 1242 (10th Cir. 1995); see also Hutchinson, 573 F.3d at 1027 n.3 (ineffective assistance claims dismissed in Movant's direct appeal, noting that they should be presented instead on collateral review).

[10]U.S. Const. Amend. VI.

[11]Strickland v. Washington, 466 U.S. 668 (1984).

[12]Id. at 687.

[13]Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[14]  In order to demonstrate prejudice, Movant must establish that counsel's performance rendered the proceedings "fundamentally unfair or unreliable."[15]

"Judicial scrutiny of counsel's performance must be highly deferential."[16]  There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."[17]  It is a movant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.[18]

## A.    Claim 1: Closing Argument

Movant alleges that his trial counsel violated the "Duty of Loyalty owed by an attorney to a client" when counsel admitted Movant's guilt to the less serious charges at closing argument.[19]

During closing argument, trial counsel conceded to the jury that Movant was guilty of Count Fifteen (distribution), Count Thirty (distribution), Counts Thirty-One and

---

[14]Strickland, 466 U.S. at 694.

[15]Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

[16]Strickland, 466 U.S. at 689.

[17]Id.

[18]See id.  A court need not address both prongs of Strickland if a movant fails to make a sufficient showing of one. Cooks v. Ward, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

[19]Motion (Doc. No. 1644; Sep. 2, 2010), at 4; see also Motion (Doc. No. 1682; Dec. 23, 2010) (Movant agrees that trial counsel asked for acquittal on charges where he faced life sentences).

Thirty-Two (felon in possession), and Count Thirty-Three (tampering).[20]  Counsel

explained to the jury that this case was about "accepting responsibility," and, in that

spirit, the Movant was accepting responsibility to these charges.[21]  However, counsel

also argued that "it's also about not holding [Movant] accountable for that which he is

not responsible for," and urged the jury to acquit him on Count 1 (Racketeer Influenced

and Corrupt Organization (RICO)), Count 2 (CCE), Count 3 (conspiracy), Counts 4-8

(distribution), and Count 29 (money laundering).[22]

      Trial counsel's statements at closing argument were "patent admissions of guilt

on . . . substantive . . . charges."[23]  Ordinarily such an "admission by counsel of his

client's guilt to the jury represents a paradigmatic example of the sort of breakdown in

the adversarial process that triggers a *presumption* of prejudice."[24]  However, "[t]he

focus must be on whether, in *light of the entire record*, the attorney remained a legal

advocate of the defendant who acted with undivided allegiance and faithful, devoted

service to the defendant."[25]

---

[20]Trial Transcript, Vol. 7, at 1322.

[21]Id.

[22]Id. at 1342-43.

[23]United States v. Marshall, No. 93-20048-01, 97-3040-JWL, 1998 WL 295590 at *2 (D. Kan. May 12, 1998).

[24]United States v. Williamson, 53 F.3d 1500, 1511 (10th Cir. 1995) (citations omitted and emphasis added).

[25]Id. (quotation omitted and emphasis added); *see* United States v. Marshall, 166 F.3d 349, 1998 WL 864012 at *3 (10th Cir. Dec. 14, 1998), *cert. denied*, 528 U.S. 861 (1999) (presumption of prejudice can be overcome when "focus[ing] on the entire record").

Challenging only some of the potential counts, "[d]epending on the particular characteristics of such an effort, . . . would not necessarily amount to ineffective assistance."[26]  "'Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments . . . and focusing on one central issue if possible.' This insight is equally applicable to closing arguments made at trial."[27]

The prosecution's evidence at trial regarding Movant's involvement with the drug scene at the Alpine Motel was "overwhelming."[28]  Trial counsel's tactic of "accepting responsibility" was intended to convey that, although Movant was guilty of discrete crimes, the prosecution did not sufficiently prove an organized illegal activity.  Given the strength of the case against Movant, it was reasonable for counsel to adopt a tactic that would sacrifice some liability for credibility in the jury's eyes in an effort to prevent conviction on the crimes that involved life sentences.[29]

Additionally, these lesser charges were backed by testimony from law enforcement while the more serious charges were backed by the testimony of drug dealers, convicted felons, and admitted liars.[30]  It is a reasonable tactical decision to

---

[26]United States v. Dago, 441 F.3d 1238, 1251 (10th Cir. 2006); Hale v. Gibson, 227 F.3d 1298, 1323 (10th Cir. 2000).

[27]Williamson, 53 F.3d at 1512 (quoting Jones v. Barnes, 463 U.S. 745, 751 (1983)).

[28]Hutchinson, 573 F.3d at 1026.

[29]See Hale, 227 F.3d at 1323 (failure to admit some involvement, in face of overwhelming evidence, would likely cause a loss of all credibility with a jury).

[30]See Trial Testimony, Vol. 7, at 1324.

focus attacks on the evidence derived from the latter group, especially when attacks on the former were not likely to be successful.

Movant argues that the trial tactic of admitting guilt on some charges must be "expressly consented to on the record by the Defendant."[31]  Here, the record indicates that Movant himself consented to the tactic.[32]  Additionally, although an explicit waiver provides evidence of the objective reasonableness of the decision, the absence of waiver may not indicate that no consent was given.  Since the <u>Strickland</u> reasonableness analysis is objective, the query is whether the decision is acceptable based on the facts of the case, not a defendant's acceptance of the trial tactic at the time it is used.[33]

Given the strength and volume of the evidence against Movant, it was a reasonable strategic decision to argue guilt on the lesser offenses.[34]  The record indicates that Movant's attorney "remained a legal advocate who acted with undivided

---

[31]Doc. No. 1644, at 4.

[32]Affidavit of Ronald Gainor (Doc. No. 1666-1; Sep. 24, 2010), at 1 ¶ 6.  Due to his attack on his attorney's conduct, the Movant has waived his attorney-client privilege in those areas to which he has complained. <u>United States v. Pinson</u>, 584 F.3d 972, 977-78 (10th Cir. 2009), *cert. denied*, 130 S.Ct. 1548 (2010).

[33]*See* <u>Marshall</u>, 1998 WL 864012 at *3 (*citing with approval* <u>United States v. Simone</u>, 931 F.2d 1186, 1197 (7th Cir. 1991) (rejecting Sixth Circuit's rule in <u>Wiley v. Sowders</u>, 647 F.2d 642 (6th Cir. 1981), that consent on the record is mandatory when counsel intends to admit guilt)).

[34]<u>Strickland</u>, 466 U.S. at 688 (inquiry is when "considering all the circumstances" whether counsel's performance fell "below an objective standard of reasonableness"); <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 480 (2000) ("the relevant question is not whether counsel's choices were strategic, but whether they were reasonable").

allegiance and faithful, devoted service to him."[35]  Counsel's decision was based on the

entirety of circumstances surrounding the trial, and was an adequately informed

strategic choice.[36]  Accordingly, Movant's trial counsel did not provide ineffective

assistance during the closing argument.

### B.    Claim 2: Impeachment

Movant alleges his trial representation was ineffective for "failing to conduct an

adequate pre-trial investigation."[37]  However, based on his allegations, this claim is

better described as a failure to adequately impeach witnesses that testified at trial, and

a failure to call a witness that could potentially impeach testimony of other witnesses.

These three witnesses are addressed separately below.

### 1.    David Zamora

David Zamora is the son of the motel's owner and the brother of Steve, a

prosecution witness who testified at trial.  David Zamora worked in the Alpine Rose

office and also was listed as a potential prosecution witness.  Movant claims that David

Zamora should have been called to testify that Movant did not have any conspiratorial

or business relationship with others at the Alpine Rose motel.[38]

---

[35]<u>Marshall</u>, 1998 WL 864012 at *3 .

[36]"[W]here it is shown that a particular decision was, *in fact,* an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'" <u>Bullock v. Carver</u>, 297 F.3d 1036, 1046 (10th Cir. 2002); <u>Strickland</u>, 466 U.S. at 690; *see also* <u>United States v. Casteneda-Ulloa</u>, 100 Fed. Appx. 757, 761 (10th Cir. 2004).

[37]Doc. No. 1 at 5.

[38]Doc. No. 1644, at 14-15.

Case 1:05-cr-00141-MSK   Document 1766   Filed 08/31/11   USDC Colorado   Page 11 of 18

David Zamora's testimony would have allegedly been that he was not aware of the drug hierarchy in the motel.[39]  However, this testimony likely would have been of limited value because it reflected the limit of David Zamora's knowledge and was contradicted by the testimony of multiple other witnesses, including his brother, Steve Zamora.  Thus, the exculpatory value of Zamora's potential testimony likely was minimal.

Assuming that the testimony had some value, it would likely have been offset by opening the door to damaging testimony in other areas.  As an observer in the middle of the illegal action at the motel, David Zamora could have been examined with regard to transactions pertinent to other charges. Indeed, the threat of causing "more harm than good" convinced trial counsel to avoid directly invoking Zamora's testimony.[40]  It therefore was an objectively reasonable tactical decision for counsel to not call David Zamora to testify.

2.    Paul Rose

Paul Rose, a prosecution witness who testified at trial, was a manager and maintenance man at the Alpine Rose.  Movant claims Rose should have been impeached with statements he made before trial indicating that Movant was not part of

---

[39]Id.

[40]Doc. No. 1666-1, at 1 ¶ 7.

the drug trade at the motel.[41]  At trial, Rose testified otherwise: not only was Movant a part of the organization, he was one of its leaders.

Had Mr. Rose been the only witness who testified about Movant's involvement, impeachment might have been appropriate and beneficial.  However, multiple witnesses testified to Movant's involvement in drug transactions.  Thus, it is unlikely that the impeachment of a single witness on that fact would have changed the outcome of the trial.  More important to counsel's strategy was limiting the effect of Rose's testimony through cross-examination.  It appears that this goal was accomplished, at least in part, when the jury ultimately acquitted Movant on Count 8.[42]

3.    Tyrone Streno

Detective Tyrone Streno, a prosecution witness who testified at trial, was an undercover agent for the North Metro Drug Task Force.  On July 6, 2004, Streno was involved in an undercover operation at the Alpine Rose.  During this operation, Streno contacted Movant in an attempt to purchase crack.  Movant declined to sell to the detective and instead directed Junior Ray Montoya, a drug dealer who worked out of the motel, to sell crack to the detective.

Movant apparently claims that the evidence that he directed Montoya to take the detective downstairs to sell him crack is false, and his argument incorporates details from affidavits and testimony from law enforcement officers involved in the July 6

---

[41]Doc. No. 1644, at 16-17.

[42]*See* Doc. No. 1661-1, at 2 ¶ 7.

operation.[43]  Movant seems most concerned with a statement allegedly made by Streno

that "Lt advised he did not want to 'serve' me, but instructed Jr Ray to take me

downstairs and 'serve' me.  This term is known to me to mean 'sell to'."[44]  Movant's

argument is apparently that none of the other law enforcement officers involved that day

explicitly mentioned Movant's use of the term "serve" (or similar statements) indicating

that Movant was ordering Montoya to sell drugs to Streno.

It is somewhat unclear how Movant contends that his representation was

ineffective in this context.  Counsel cross-examined Streno on this subject during the

fifth day of trial.[45]

### C.      Claim 3: Confrontation Violations

1.      Receipt Books

The receipt books from the Alpine Rose motel were admitted as evidence at trial

pursuant to stipulation.[46]  Movant alleges that this stipulation was improper.[47]

The Court disagrees.  Counsel's stipulation was objectively reasonable and the

Movant suffered no prejudice.  The existence of the books was admissible.  If the

contents had been offered for the truth of the matter asserted, an objection based on

their hearsay nature might have been made.  However, given the business operation at

---

[43]Doc. No. 1644, at 21-32.

[44]Id. at 22.

[45]Trial Transcript, Vol. 5, at 966-71.

[46]Trial Transcript, Vol. 4, at 754.

[47]Doc. No. 1644, at 17-18, 20.

the Aspen Rose, this likely would have been rebutted by a showing supporting application of the business records exception.[48]   Thus, stipulation of the admission of the records was an objectively reasonable trial tactic.

As to prejudice, there was none.  Indeed, their admission allowed Movant's counsel to cross-examine Steve Zamora with regard to the books and to later argue that the books reflected the receipt of monies that had not been derived from illegal sources.[49]

2.    Detective Coshall

Movant alleges that his counsel should have called the case agent, Detective Guy Coshall, who had testified before the grand jury.[50]  However, Movant does not explain how Coshall's testimony would have materially helped him at trial.

Conversely, calling Coshall at trial would have exposed Movant to yet more testimony as to how deeply Movant was involved in the motel drug operation.[51]  It was an objectively reasonable decision to bypass calling Coshall at trial.

**D.    Claim 4: Fourth Amendment Violation**

During the search of Movant's home after law enforcement executed an arrest warrant, his jacket was searched and drugs were found.  Movant claims that his counsel

---

[48]Fed. R. Evid. 803(6).

[49]*See* Doc. No. 1666-1, at 2 ¶ 8.

[50]Doc. No. 1644, at 35-37.

[51]*See* Doc. No. 1666-1, at 2 ¶ 8 (trial counsel was trying to limit evidence implicating Movant; calling Coshall would have "surely provided more damaging evidence").

14

should have challenged the warrantless search of the jacket, and that failure to do so violated his Fourth Amendment rights.[52]

Before trial, Movant's counsel challenged the police's search of the home and argued that all evidence obtained during the search, including the drugs found in the jacket, was "fruit of the poisonous tree."[53] This contention was rejected by this Court and the decision was affirmed on appeal.[54]

Respondent claims that this decision in the direct appeal renders Movant's argument an improper collateral attack on a matter that has already been definitively decided.[55] However, the Court understands Movant's argument to be slightly different - that his counsel should have separately challenged the search of the jacket.

Viewed in this light, however, the Court finds no showing of ineffective assistance. The difficulty with an independent challenge to the search of the jacket is that it occurred in conjunction with the search of the house. If the search of the house was lawful, the search of the jacket would likely have been justified on grounds of officer safety.[56] Accordingly, counsel made a tactical decision to attempt to suppress

---

[52]Doc. No. 1644, at 33-34.

[53]Hutchinson, 573 F.3d at 1023.

[54]Id. at 1023-24.

[55]Ordinarily, "[section] 2255 is not available to test the legality of matters which should have been raised on appeal." United States v. Challoner, 583 F.3d 745, 749 (10th Cir. 2009) (quoting United States v. Khan, 835 F.2d 749, 753 (10th Cir. 1987)).

[56]See, e.g., Terry v. Ohio, 392 U.S. 1, 29 (1968) (a search is justified to the extent it protects officer safety).

the jacket by instead arguing on broader suppression grounds.[57]  In the absence of strong independent grounds for suppressing the search of the jacket, counsel's tactical decision was reasonable.

### E.      Claim 5: Dismissal of Money Laundering Count

Movant alleges that his trial counsel should have sought dismissal of Count 29, the money laundering charge.  However, trial counsel, in fact, did seek dismissal of the charge after the prosecution rested at trial pursuant to Fed. R. Crim. P. 29.

> We believe that -- and I think the record is clear there was no testimony from any of the receivers of this money, R.J. Zamora, Cecilia, or David Zamora, that they received and/or believed that moneys on any one of these 42 occasions were connected to an illegal activity. The Government wants to make a leap and inference without any evidence. And we believe that Count 29 should be dismissed.[58]

### III.     Other Pending Motions

Respondent seeks leave to supplement the record with an affidavit from Movant's trial counsel (Doc. No. 1666).  The Court grants this request.

In Movant's motion to amend (Doc. No. 1682), he asks the Court to correct an argument he made in his response to the filing of his counsel's affidavit (Doc. No. 1675). The Court grants this request and has noted the correction to his response.

---

[57] *See* Doc. No. 1661-1, at 2 ¶ 9.

[58] Trial Transcript, Vol. 5, at 1152-53.

16

Movant requests copies of transcripts in this matter (Doc. Nos. 1623, 1654). Movant has not demonstrated a particularized need for any portion of the transcript, so this request is denied.[59]

Movant requests discovery in this action (Doc. No. 1655).  The Court finds that good cause has not been shown to authorize discovery and this request is denied.[60]

Finally, Movant requests "expansion of the record" regarding his Fourth Amendment claim pursuant to Fed. R. Governing Section 2255 Proceedings 7(b) (Doc. No. 1707).  This document appears to solely contain additional legal argument on the Fourth Amendment issue, and does not seek to factually expand the record.  To the extent this document contains legal argument, it has been treated as part of his reply. To the extent Movant is seeking to expand the record, this request is denied.

Based on the foregoing facts and law, it is

ORDERED that Respondent's Motion To Supplement The Record With The Attached Affidavit Of Ronald Gainor, Esq. (Doc. No. 1666; Sep. 24, 2010) is granted.  It is

FURTHER ORDERED that Movant's Motion To Amend Motion In Response To The Government Supplement Of The Record Regarding Ronald Gainor Affidavit Pursuant to Rule 7(b) of 28 U.S.C. § 2255 (Doc. No. 1682; Dec. 23, 2010) is granted. It is

---

[59] See Bozeman v. United States, 354 F.Supp. 1262 (E.D. Va. 1973).

[60] Fed. R. Governing Section 2255 Proceedings 6(a).

17

FURTHER ORDERED that Movant's motions for copies of transcripts (Doc. No. 1623, May 7, 2010; Doc. No. 1654, Aug. 25, 2010) is denied.  It is

FURTHER ORDERED that Movant's request for discovery (Doc. No. 1655; Sep. 25, 2010) is denied.  It is

FURTHER ORDERED that Movant's request to expand the record (Doc. No. 1707; Mar. 21, 2011) is denied.  It is

FURTHER ORDERED that the motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1644; Aug. 2, 2010) is DENIED.  The Clerk shall enter a judgment consistent with this determination.

FURTHER ORDERED that a certificate of appealability shall not issue because Movant has not made a substantial showing of the denial of a constitutional right.

Dated this 31st day of August, 2011

BY THE COURT:

Marcia S. Krieger
United States District Judge

18